664 P.2d 270

**BANK OF IDAHO, a corporation,
Plaintiff-Respondent,**

v.

**Roy NESSETH and the Aetna Casualty
and Surety Company, a corporation,
Defendants-Appellants.**

No. 13823.

Supreme Court of Idaho.

April 27, 1983.

Rehearing Denied June 9, 1983.

John R. Tait, of the firm Keeton & Tait, Lewiston, for defendants-appellants.

John H. Bengtson, of the firm Randall, Bengtson & Cox, Lewiston, for plaintiff-respondent.

THIS OPINION SUPERSEDES THE COURT'S OPINION NO. 89 ISSUED OCTOBER 13, 1982, WHICH IS WITHDRAWN *

BISTLINE, Justice.

The Bank of Idaho (Bank) recovered a judgment against a certain Lewiston automobile dealership. The judgment adjudicated the amount due the Bank, and directed foreclosure against certain personalty upon which the Bank had security liens protecting the indebtedness due it. Pursuant to that judgment a sheriff's sale was commenced on April 27, 1979, and some property was there sold. The sale was terminated at the Bank's direction. The Bank did so on the request of Roy Nesseth, a creditor of the dealership, and a defendant herein. The district court directed a discontinuance of further sale proceedings in accordance with a stipulation between Roy Nesseth and the Bank. It does not appear in the record whether the dealership was a party to that stipulation.

In consideration of the Bank's forebearance, Roy Nesseth apparently agreed to as-

sume and pay the indebtedness due the bank from the dealership as determined by the Bank's judgment. Nesseth, on the same day, April 27, 1972, delivered to the Bank an instrument entitled Indemnity Bond executed by him as principal and Aetna as surety. The obligation of the bond was that Nesseth and Aetna were bound unto the Bank in the penal sum of $60,000, but, if Nesseth paid the money owing on the judgment against the car dealership within sixty days from the date of the bond, the same was null and void.[1] The transaction of April 27, 1979, appears to have been a hurried-up proposition. It was not until October 25, 1979, almost six months later, that the Bank and Nesseth reached a written agreement.

This agreement of October 25, to which Aetna was not party, spelled out the ways and means by which Nesseth was to purchase from the Bank the unsold property foreclosed upon pursuant to the district court judgment, and stated that Nesseth and Aetna were to be released from liability on the bond upon the Bank's receipt of the amount stated. Nesseth agreed to purchase the property on November 7, 1979, at 11:00 a.m. for the sum of $70,828.13, in cash, plus other costs owed to the Bank for such things as storage and transportation of the property. The agreement provided that three conditions could defeat the obligations set forth therein: (1) redemption of the property pursuant to the provisions of the Uniform Commercial Code; (2) an injunction by a court of competent jurisdiction (contemplating a bankruptcy injunction); or (3) tender to the Bank by any third party the sum of $70,828.13 or more for the property. The agreement further provided that the Bank at Nesseth's direction could sell the property to General Motors under its franchise agreement with the car dealership, and that if such a sale was completed, the Bank was to pay the amount received from General Motors to Nesseth. If the sale was not consummated, however, title to the property was to pass to Nesseth, with-

* See Appendix A.

1. The indemnity bond is set forth in full in Appendix B.

out any reduction in the purchase price upon which the parties had agreed.

On December 3, 1979, the Bank brought suit against Nesseth alleging nonperformance of the October 25 agreement and requesting a judgment in the amount of $78,-280.13 and attorney's fees. In a separate count, the Bank brought suit against Aetna upon the indemnity bond, seeking a judgment in the sum of $60,000, plus interest and attorney's fees. Nesseth and Aetna filed a joint answer which, in essence, denied any liability and requested attorney's fees against the Bank.

The Bank moved for summary judgment against Aetna alone. The court, concluding that there were no genuine issues of material fact to be tried as between the Bank and Aetna, entered judgment in favor of the Bank and against Aetna for $60,000 and its costs of suit.[2] At this juncture Nesseth alone filed an amended answer in which he counter-claimed against the Bank for damages allegedly caused by negligent care of the involved personalty. Motions for a stay of execution and reconsideration of the summary judgment order[3] were made by Aetna and denied by the court. Both Aetna and Nesseth appeal from the order denying these motions.[4]

Aetna argues that the trial court erred in not granting its motion for reconsideration of the summary judgment order against it because "[the] affidavits [accompanying its motion], when considered with the other affidavits and admissions in the pleadings before the trial court, clearly raise questions of conflicting issues of material facts ...." Aetna contends that there was an issue of material fact as to whether its obligation under the indemnity bond was materially altered, resulting in at least partial discharge of its obligation under the bond under the rules set forth in *Ore-Ida Potato Products, Inc. v. United Pacific Insurance Co.,* 87 Idaho 185, 392 P.2d 191 (1964). Aetna offers two reasons to support its contention that the obligation was materially altered.

■ First, Aetna argues that there is an issue of material fact as to whether the agreement of October 25, 1979, between the Bank and Nesseth materially altered Aetna's obligation under the indemnity bond. We cannot agree. Aetna's obligation, as specifically set forth in the indemnity bond,[5] was not a guarantee of Nesseth's agreement to pay the judgment against the car dealership, but an independent obligation in the nature of a performance bond. Thus, Aetna's obligation remained unaltered by the agreement of October 25,[6] and the existence of the agreement between the Bank and Nesseth did not raise an issue of material fact regarding the Bank's claim against Aetna.

■ Second, Aetna argues that there is an issue of material fact whether its obligation under the indemnity bond was materially altered by the Bank's extension of the time in which Nesseth could pay the judgment upon which the bond was entered. Aetna's argument must fail, however, be-

2. The amount of costs and the claim for attorney's fees apparently were questions not yet resolved when the appeal was filed.

3. Aetna's motion for reconsideration of the summary judgment order was entitled "Motion for New Trial." Aetna argues that its motion was properly made pursuant to I.R.C.P. 59. In light of the fact that the respondent has conceded that the motion was properly brought before the trial court, it is not necessary in this case to determine the scope of I.R.C.P. 59.

4. Although Nesseth was named as an appellant in this appeal, no arguments have been made in reference to his position. Therefore, for the sake of clarity we will refer to the arguments presented in the appellants' briefs as those of Aetna.

5. *See* Appendix B.

6. It appears that even Nesseth's obligation under the bond was not altered by the agreement of October 25. Pursuant to the agreement Nesseth was only to be released from liability under the bond upon the Bank's receipt from Nesseth of the amount called for in the agreement. That amount was never paid and hence this case resulted. The fact that the Bank chose to sue Nesseth on the agreement rather than the bond in no way indicates any alteration in the rights and obligations of the parties under the bond.

cause it consented to the extension.[7] See 74 Am.Jur.2d *Suretyship* § 48 (1974) ("the surety is not released from his obligation as surety where ... he consents to the alterations.") Thus, the existence of the extension does not raise an issue of material fact as to whether Aetna's obligation was materially altered.

■ Aetna also argues that there is an issue of material fact whether it is entitled to at least partial discharge of its obligation under the bond because of loss of and damage to the property held by the Bank. Aetna argues that "[a] compensated surety like Aetna may be released, *pro tanto,* to the extent of the injury or prejudice suffered due to the action of the indemnitee," citing 74 Am.Jur.2d *Suretyship* § 260 (1974). However, the section cited by Aetna pertains to alterations in the underlying agreement which result in discharge of the surety. The rules regarding discharge of a surety due to impairment of collateral by the obligee on a bond, are set forth clearly in *National Bank of Washington v. Equity Investors,* 86 Wash.2d 545, 546 P.2d 440, 447 (Wash.1976).

"If the principal's debt to the creditor is secured by property of the principal, the surety acquires by the operation of law, a kind of property interest in the res that is securing that primary debt.... The creditor, in such instances, is under a legal duty to take whatever action is necessary to maintain the value of security. Any diminution of value of the security caused by the creditor, whether by negligence or not, results in pro tanto discharge.

"'The reason for the pro tanto discharge of the surety is the impairment of the surety's right of subrogation to enforce the security....

Simpson, *Simpson on Suretyship,* pt. 4, ch. 3, § 74, p. 370 (1950).'" (Citation omitted.)

■ We believe that Aetna is not entitled to discharge under the rules set forth above because the property in question was not security for either Aetna's or Nesseth's obligations under the bond. The property was security held by the Bank on its original judgment against the car dealership, an obligation which was not guaranteed by Aetna. The loss of or damage to the property in question did not impair the Bank's rights against the principal debtor under the bond—Nesseth. Therefore, the loss of or damage to the property held by the Bank gives rise to no rights in Aetna as against the Bank.[8] Accordingly, even if we assume that the issue of the alleged loss of and damage to the property was properly brought to the attention of the trial court, it did not give rise to an issue of material fact so as to preclude the entry of summary judgment against Aetna.

The record demonstrates that Nesseth has failed to pay the Bank all sums of money owing on the judgment upon which the bond was entered, and that more than $60,000 is owed to the Bank pursuant to that judgment.[9] In view of our determination that there existed no issue of material fact whether Aetna's obligation under the indemnity bond had been altered or in any way discharged, we hold that the trial court acted properly in denying reconsideration of its order granting summary judgment against Aetna.

■ Aetna also argues that in light of the loss of and ·damage to the property held by the Bank, the trial court erred in deny-

---

7. The letters which resulted in the extension of time, apparently for an indefinite period, are set forth in Appendix C. It was subsequent to this correspondence that the parties entered into the agreement of October 25, which established a specific date for performance.

8. We note that such loss or damage may, however, give rise to rights in the car dealership and that Nesseth, pursuant to the agreement of October 25, has claimed to have rights as

against the Bank, which allegations are set forth in Nesseth's counter-claim in this matter.

9. Aetna argues that it should be credited for the partial payment of the judgment which was made by Nesseth in the amount of $1,500. However, even if the $1,500 is applied to the judgment, more than $60,000 is due and owing to the Bank under the judgment, and, therefore, the partial payment in no way affects Aetna's liability under the bond.

ing its motion for a stay of execution. Aetna argues that its motion should have been granted pursuant to I.R.C.P. 62(g). Rule 62(g) provides in part that "[w]hen a court has ordered a final judgment on some but not all of the claims presented ..., the court may stay enforcement of that judgment ...." [10] The use of the word "may" in Rule 62(g) demonstrates that the rule was intended to provide the court with discretionary power to stay enforcement of a judgment. In view of the fact that the loss of or damage to the property gave rise to no rights in Aetna as against the Bank, we find no abuse of discretion on the part of the trial court and affirm its order denying a stay of execution.

■ Aetna also argues that the absence of findings of fact in connection with this case requires that it be remanded to the trial court. However, findings of fact are not necessary to support decisions of summary judgment motions under I.R.C.P. 56, or to support a decision relating to any other motion, except with respect to motions for involuntary dismissal under I.R.C.P. 41(b). I.R.C.P. 52(a).

Accordingly, the orders appealed from are *affirmed.* Costs to respondents.

DONALDSON, C.J., SHEPARD, J., and McFADDEN, J. (retired), concur.

## APPENDIX A

The withdrawn opinion in this case, now to be found only at 82 I.S.C.R. 825, dismissed the appeal for lack of certification under I.R.C.P. 54(b). However, on reflection, we incline toward the view of Justice Shepard in *Kifer v. School District No. 394,* 100 Idaho 411, 599 P.2d 302 (1979), where he noted that "[n]either party addresse[d] the appealability of the judgment with prejudice which was entered by the trial court." *Id.* at 412, 599 P.2d at 303.

Here neither party addressed the issue of the appealability of the judgment in their initial briefs and the question was raised for the first time by the Court at oral argument. In supplemental briefs addressing this issue both parties argued that the judgment of the district court was final and that the case should be decided on its merits. In the interests of sound judicial administration, and with proper regard for the fact that the Bank essentially was possessed of two separate causes of action, though pleaded in a single lawsuit, we have agreed that it would be inappropriate to dismiss the appeal.

## APPENDIX B

### THE AETNA CASUALTY AND SURETY COMPANY

Hartford, Connecticut 06115

### INDEMNITY BOND

BOND NUMBER SS S 14847 BCA

KNOW ALL MEN BY THESE PRESENTS, That we ROY NESSETH, as Principal and THE AETNA CASUALTY AND SURETY COMPANY, a corporation organized under the laws of the State of Connecticut and authorized to transact the business of Surety in the State of Idaho, as Surety, are held and firmly bound unto THE BANK OF IDAHO in the penal sum of SIXTY THOUSAND AND NO/100s _____ ($60,000.00**) __ DOLLARS, lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves and our heirs, administrators, successors, and assigns, jointly and severally, firmly by these presents.

WHEREAS judgment was entered on the 31st day of January, 1979 by the District Court of the Second Judicial District of the State of Idaho, in and for the County of Nez Perce, Civil Case No. 39999, in favor of the Bank of Idaho and against Don Nesseth Chevrolet, Inc., reference to which judgment is hereby had for further particulars;

---

10. Although there was no certification of the summary judgment as final pursuant to I.R.C.P. 54(b), the parties in this case have assumed that the judgment was final and that therefore this case falls within the purview of I.R.C.P. 62(g). Aetna offers no argument other than that discussed in text in support of its contention that the trial court erred in denying the stay of execution.

AND WHEREAS there is a balance owing on said judgment to the Bank of Idaho of Seventy Nine Thousand, Ninety Seven and 14/100S DOLLARS ($79,097.14**);

AND WHEREAS said judgment has in part been satisfied by virtue of a sheriff's sale conducted on the 27th day of April, 1979;

AND WHEREAS Roy Nesseth, said Principal, is a creditor of Don Nesseth Chevrolet, Inc. and has requested permission from the Bank of Idaho that certain of the personal property of Don Nesseth Chevrolet, Inc. not be sold in said sheriff's sale on the 27th day of April, 1979, but that said sale be deferred until further order of the Court, which said property. remaining in possession of the sheriff pending delivery to Roy Nesseth or to a party designated by Roy Nesseth or his agent to the sheriff, upon notification to the sheriff by Roy Nesseth or his agent.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH That, if Roy Nesseth shall pay over to the Bank of Idaho all sums of money owing on the aforedescribed judgment within a period of sixty days from the date of this bond, this bond to be null and void; otherwise to remain in full force and effect.

It is further provided, however, that the obligation of the surety shall not exceed the penalty of this bond.

IN WITNESS HEREOF, we sign and seal this bond on the 27th day of April, 1979.

ROY NESSETH, PRINCIPAL

/s/
Roy Nesseth

THE AETNA CASUALTY AND SURETY COMPANY

Countersigned by:     /s/
Judith A. Radabaugh, Attorney-in-Fact

COMPLAINT

APPENDIX C

# RANDALL, BENGTSON & COX
## LAWYERS

RUSSELL S. RANDALL
JOHN H. BENGTSON
STEVE R. COX

FIRST SECURITY BANK BUILDING

LEWISTON, IDAHO 83501

TELEPHONE 743-4526

MAILING ADDRESS
P.O. BOX 446

June 26, 1979

Mr. John R. Tait
Keeton and Tait
Attorneys at Law
P.O. Drawer E
Lewiston, Idaho 83501

Re: Bank of Idaho v. Don Nesseth
       Chevrolet, Inc.

Dear John:

As I explained to you on the phone yesterday, I am meeting with Leonard Haselton, of Bank of Idaho, the afternoon of Wednesday, June 27th, to discuss the above matter. I had been awaiting a copy of a letter from either GM or its attorneys indicating they were working on the matter of the repurchase of the GM authorized parts. A copy of that letter was furnished to me a couple of days ago.

As I indicated to you, I anticipated that I would be in a position to write you a letter following my conversation with Mr. Haselton to the effect that Bank of Idaho would grant an additional reasonable amount of

time for GM to complete the purchase of the authorized parts, assuming that this would not prejudice our position with Aetna under the bond furnished by Roy Nesseth. By telephone yesterday, you advised me that you needed a letter as soon as possible from me indicating this would be the case.

I am satisfied that following my conference with Mr. Haselton we can enter into a short memorandum agreement, subject to approval by Aetna, extending, for a reasonable time, the period of time for GM to complete the purchase of the inventory in accordance with the terms of the franchise agreement. This would necessarily be conditioned upon some written indication from Aetna that the granting of such additional time would not in any way prejudice our rights insofar as the bond is concerned.

I trust this letter will suffice until I have had a chance to meet with Mr. Haselton and you.

> Very truly yours,
> /s/ John H. Bengtson
> JOHN H. BENGSTON

JHB:ch

cc: Mr. Leonard Haselton
　　Mr. Darrel W. Aherin

## MOTION IN OPPOSITION TO PLAINTIFF's MOTION FOR SUMMARY JUDGMENT

West 601 Main

Suite 1000

Spokane, Washington 99201

July 3, 1979

John R. Tait

Keeton and Tait

Attorneys at Law

P.O. Drawer E

Lewiston, Idaho 83501

Dear John:

RE: ROY NESSETH—BOND NO. 55 S 14847 BCA—BANK OF IDAHO v. DON NESSETH CHEVROLET

This will confirm our receipt of the two letters you forwarded, one from John Bengtson and the other from G.M.'s counsel, Jeffrey Strother.

We have no objection to the extention of additional time by mutual agreement, as it is, in fact, to our Principal's advantage to have the reasonable additional time in which to finalize the arrangements with General Motors for the purchase of the outstanding parts.

By means of this letter, you may convey our approval of this extention.

> Best regards,
> /s/ Judy
> Judy Radabaugh
> Bond Representative

Id

## MOTION IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BAKES, Justice, dissenting:

In the original opinion issued by this Court on October 13, 1982, now withdrawn, the Court stated that "[i]n the supplemental briefs both appellants and respondent argue that the merits of this appeal should be considered by the Court. As a practical matter, however, the respondent acknowledges that to the extent that the trial court's order denies the appellants' motion to stay execution of the judgment, the order is not appealable." The Court then acknowledged that the partial summary judgment was not final and appealable under I.A.R. 11(a)(3), and "consistent with this Court's recent decisions, *Kifer v. School District No. 394,* 100 Idaho 411, 599 P.2d 302 (1979); *Long v. Goodyear Tire & Rubber Co.,* 100 Idaho 183, 595 P.2d 717 (1979); *Farber v. State,* 98 Idaho 928, 576 P.2d 209 (1978); *Merchants, Inc. v. Intermountain Industries, Inc.,* 97 Idaho 890, 556 P.2d 366 (1976), the appeal must be dismissed." I see no reason to depart from what has been,

until today, this Court's long held and consistent policy that appeals taken from non-appealable orders must be dismissed. The Court's decision today can only insert confusion into an otherwise consistent appellate process, and will no doubt result in an increase in the number of unwarranted appeals.